UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL BOYER,

       Plaintiff,                               Case No. 08-13382
                                              Hon. Marianne O. Battani

v.

HOME DEPOT U.S.A., INC., a
Delaware corporation,

       Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Home Depot U.S.A., Inc.'s (Home Depot) Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c). The Court heard oral argument on October 7, 2009, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow, the Court **DENIES** the motion.

**II.    STATEMENT OF FACTS**

Plaintiff Michael Boyer began his employment in October 2002, as a full-time Appliances Sales Associate at the Home Depot store in White Lake, Michigan. He was promoted less than a year later to Department Supervisor. Plaintiff also was a "Key Carrier" which authorized him to act as the Manager on Duty (MOD) for the store. He was terminated on July 1, 2008, for violations of company policy.

An overview of the events giving rise to the termination follows. On June 21, 2008, Plaintiff was in the store parking lot when the Electronic Article Surveillance (EAS) alarm

1

sounded. Plaintiff observed a customer walking out of the store with a Ryobi nine-piece power tool combo pack in a shopping cart. (Def.'s Exs. 10, 13). As the customer exited the store, Plaintiff asked him several times to see the receipt. The customer walked faster and faster and finally replied he did not have a receipt and ran away from the store toward the Walmart parking lot. Boyer followed the customer. At some point, Head Cashier Janell Joyce, who was cleaning outside the front door of the store, joined Plaintiff. Boyer called the Township Police Department on his cell phone.

After the incident Plaintiff e-mailed Ron Priester, the District Loss Prevention Manger, reported what had happened, and inquired as to whether he needed to file a police report. The e-mail informs Priester that the police were called, but not that Boyer left the property. (Def.'s Ex. 9). Priester asked Boyer for a complete statement of the events, which Plaintiff provided. (See Def.'s Ex. 10). Plaintiff also stated that he knew it was against company policy[1] to apprehend a customer and stated he was only jogging after the customer at a safe distance (thirty to forty feet) so he could tell the police where the shoplifter was headed. (Id.).

---

[1] It is undisputed that Plaintiff viewed a training video on how to respond to an EAS alarm in 2006, attended training in 2007, and reviewed Standard Operating Procedures. In addition, it is undisputed that an employee who hears the alarm and simultaneously sees someone leave the store with merchandise is required to stay inside the building, get a description of the individual if possible, report the matter to management or Asset Protection. The Home Depot Code of Conduct lists "pursuing or apprehending a subject without being authorized" and "conducting or participating in any surveillance off Company property without appropriate prior approval" as Major Work Rules Violations. (Def.'s Ex. 8). The Code of Conduct specifies that a major work rule violation warrants termination for a first offense due to its serious nature. (Id.). Further, employees are forbidden from contacting the police on the basis of an EAS alarm, and for "shoplifting and other nonemergency theft situations" without first partnering with Asset Protection. (Def.'s Ex. 6 at 22).

Priester subsequently contacted other management personnel; however, they were unable to reach a consensus as to appropriate discipline. Eventually, Aaron Carmack, the Regional Vice President, was informed of the incident. Carmack requested further information, and at the conclusion of the investigation decided that Boyer, as the MOD, should be terminated, but Joyce should be given a Final Counseling instead of termination. Carmack testified that Plaintiff was terminated for leaving store property in violation of SOP 09-10, not for calling the police without first partnering with Asset Protection. (Def.'s Ex. 24, Carmack Dep. at 37-41).

The District Human Resources Manager drafted the termination notice. (Id. at 41). It reads:

> On June 21, 2008, Michael Boyer was entering the building when he heard the sensormatic alarm sound and noticed a customer exiting the store with merchandise. When Michael asked the customer for a receipt the customer ran away from The Home Depot's parking lot towards the Wal-Mart parking lot. Michael called the police and followed the customer to The Wal-Mart entrance. Michael's actions violated a major work rule violation of The Home Depot's code of conduct policy. It is important to maintain a safe working and shopping environment for associates, customers and vendors.

Pl.'s Ex. S. The Notice also includes the following statement, "As a result of Michael Boyer's actions he is being terminated for Asset Protection Violation of The Code of Conduct Policy." Id.

In his complaint, Plaintiff advances his claim that his termination was in violation of Michigan's Whistleblowers Protection Act (MPA).

## III. STANDARD OF REVIEW

The Federal Rule of Civil Procedure authorize this Court to grant summary judgment "if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact if there is no factual dispute that would affect the legal outcome of the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch Inc., 517 F.3d 321, 332 (6th Cir. 2008). In other words, the movant must show that it would prevail on the issue even if all factual disputes are conceded to the non-movant. Additionally, for the purposes of deciding on a motion for summary judgment, a court must draw all inferences from those facts in the light most favorable to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

The Whistle Blower Protection Act provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body

> to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

MICH. COMP. LAWS. § 15.362.

"To establish a prima facie case under the WPA, plaintiff must show that (1) he was engaged in a protected activity as defined by the act, (2) the defendant discharged him, and (3) a causal connection existed between the protected activity and the discharge." Roulston v. Tendercare (Michigan), Inc., 608 N.W.2d 525, 529 (Mich. Ct. App. 2000). Actions under the WPA are analyzed using the "shifting burdens" framework utilized in retaliatory discharge actions under Michigan's Elliott-Larsen Civil Rights Act. Id. Under that framework, the plaintiff bears the initial burden of establishing a prima facie case. Id. If the plaintiff establishes a prima facie case using circumstantial evidence, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the challenged action. If the defendant produces evidence establishing the existence of a legitimate reason for the discharge, the plaintiff then has the opportunity to prove that the legitimate reason offered by the defendant was not the true reason, but was only pretext. Id.

### A. Protected Activity

Defendant argues that Plaintiff can establish a prima facie case because Plaintiff has not engaged in any protected activity. It advances several cases in support of its position. In Henry v. City of Detroit, 594 N.W.2d 107-111 (Mich. Ct. App. 1999) (emphasis added), the state appellate court limited a whistleblower to an individual who "communicate[d] the **employer's** wrongful conduct to a public body." Similarly, in Shallal v. Catholic Social Servs., 566 N.W.2d 571, 579 (Mich. 1997) (citation omitted), the state supreme court noted that the main purpose of the WPA was to "combat corruption or criminally irresponsible

5

behavior in the conduct of government or large businesses," and that "the primary motivation of an employee pursuing a whistleblower claim must be a desire to inform the public on matters of public concern and not personal vindictiveness." Defendant maintains that these cases place this case outside the scope of the WPA. Boyer did not report his employer, and his report does not serve the main purpose of the Act–to combat corruption. The Court disagrees with Home Depot's narrow reading of the statute.

In Dolan v. Continental Airlines, 563 N.W.2d 23 (Mich. 1997), the Michigan Supreme Court held that an employee's report of a suspected drug trafficker's illegal activities to the federal Drug Enforcement Agency (DEA) was protected activity under the WPA. Because this case dealt with an employee reporting the criminal conduct of a customer rather than an employer, it undermines Defendant's reliance on Henry. The Dolan court "declined to limit the application of the WPA to reported violations of the employer alone," reasoning that "[i]n accordance with the plain language of the act, plaintiff has alleged that she was fired because she reported or was believed to have reported a violation of the law. This allegation is sufficient to state a claim of wrongful discharge from employment under the WPA." Id. at 26. This Court endorses the analysis in Dolan. Not only does it comport with the actual statutory language, the outcome acknowledges that the "WPA is a remedial statute and thus should be liberally construed in favor of employees who are willing to risk adverse employment consequences as a result of whistle blowing activities." Id. Accord Dudewicz v. Norris-Schmid, Inc., 503 N.W.2d 645 (Mich. 1993) (noting that the WPA was not limited to employee reports of violations **by employers** despite the statutory language that seemed to limit the provision to the discharge of an employee who "reports ... a violation or a suspected violation of a law") (emphasis added). Accordingly, the Court is

satisfied that Boyer engaged in protected activity notwithstanding the court's discussion of legislative history in Shallal.

### B. Causal Connection

In the alternative Defendant argues there is no causal connection between Boyer's call and his termination because his contact with the police was not "a significant factor" in the termination decision. At the outset, the Court rejects Defendant's formulation of the standard. Although the significant standard has been applied in civil rights retaliation cases, see Barrett v. Kirtland Community College, 628 N.W.2d 63 (Mich. Ct. App. 2001), courts interpreting the WPA have merely required the protected conduct to be "a motivating factor, " or an "influencing factor." West v. General Motors Corp., 665 N.W.2d 468 (Mich. 2003). Accord Shaw v. City of Ecorse, 770 N.W.2d (Mich. Ct. App. 2009) .

"A plaintiff may establish a causal connection through either direct evidence or indirect and circumstantial evidence. Direct evidence is that which, if believed, requires the conclusion that the plaintiff's protected activity was at least a motivating factor in the employer's actions." Sniecinski v. Blue Cross & Blue Shield, 666 N.W.2d 186, 192 (Mich. 2003).

To establish causation using circumstantial evidence, the "circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." Skinner v. Square D Co., 445 Mich. 153, 164, 516 N.W.2d 475 (1994). Speculation or mere conjecture "is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference." Id. (quotation marks and citation omitted). In other words, the evidence presented will be sufficient to create a triable issue of fact if the jury could reasonably infer from the evidence that the employer's actions were motivated by

7

retaliation. See Taylor v. Modern Eng'g, Inc., 653 N.W.2d 625 (Mich. Ct. App. 2002).

According to Plaintiff, direct evidence exists because at the time he was fired, he was informed that there were two reasons: one was calling the police to report the shoplifting; the other was following the shoplifter off the property. (See Def.'s Ex. 35, Boyer Dep. at 96-97). The termination notice cited both actions. (See Pl.'s Ex. S). Accordingly, Plaintiff has advanced direct evidence that his report to the police was a factor influencing the decision to terminate him.

Defendant attacks the characterization of the evidence as direct because Carmack testified at his deposition that the phone call played no part in the decision. The Court finds that Carmack's assertion to the contrary, that Plaintiff's violation of company policy by calling the police was of no consequence, merely creates a question of fact for the jury to decide.

Second Home Depot, relying on Goodrich v. Home Depot U.S.A., Inc., 2009 WL 154341, *3 (Mich. Ct. App. 2009) (affirming an award of summary judgment to the defendant despite the plaintiff's claim that his termination violated the WPA ) argues that the comments are too "amorphous" to allow even an inference of causation. The termination notice here, in contrast to the comments made in Goodrich, specifically identifies the whistleblower activity–contacting the police. The notice stands in stark contrast to the language of the decisionmaker in Goodrich that "[b]ecause of the **events** that have happened outside of the store, it's going to lead to . . .either you being terminated or quitting, or resigning." Id. (emphasis added). This Court concurs in the Goodrich court's characterization of the reference to "events' leading to the plaintiff's termination as "simply too amorphous to allow for such an inference." See id. That characterization cannot stand

8

in the matter before this Court. Many events were incorporated into the comments made by Goodrich's supervisor whereas in the termination notice before this Court only two **actions** were identified–the phone call to the police and following the customer.

In light of the direct evidence advanced by Plaintiff, the Court does not address the arguments relative to whether Boyer can make a circumstantial case of a causal connection.

## IV. CONCLUSION

The Court **DENIES** Defendants' motion because Plaintiff has shown the existence of genuine issues of material fact relative to his WPA claim.

**IT IS SO ORDERED.**

                                                      s/Marianne O. Battani
                                                  HON. MARIANNE O. BATTANI
                                                  UNITED STATES DISTRICT JUDGE

Dated: October 21, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were sent on this date to counsel of record by ordinary mail and/or electronic filing.

                                                    s/Bernadette Thebolt
                                                        Deputy Clerk